**Juyoun Han (pro hac admission)**
**Eric Baum (seeking pro hac admission)**
Eisenberg & Baum LLP
24 Union Square East, Penthouse
New York, NY 10003
Telephone: 212-353-8700
jhan@eandblaw.com
*Attorneys for Plaintiff*

**Angie I. Martell**
Iglesia Martell Law Firm PLLC
2723 S. State Street, Suite 150
Ann Arbor, MI 48104
Telephone: 734-369-2331
angie@iglesiamartell.com
*Local Counsel*

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

|  |  |
|---|---|
| KIP LYALL, on behalf of himself and all others similarly situated,<br><div align="center">*Plaintiff*,</div><br>v.<br>ELSEVIER INC., RELX PLC, AND CELL PRESS INC.,<br><br><div align="center">*Defendants*.</div> | Civ. No. 1:24-cv-12022-PBS |

<div align="center">

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

</div>

Dated: November 19, 2024

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ...................................................................................................... 1

ARGUMENTS................................................................................................................. 2

I.  Plaintiff's claim under Section 10(b) and Rule 10b-5 of the Exchange Act are
Sufficiently Pled................................................................................................... 2

     A.  The Complaint Sufficiently Pleads Material Misrepresentation
and Omissions................................................................................................ 4

     B.  The Complaint Sufficiently Pleads Scienter ...................................................... 8

     C.  The Complaint Adequately Pleads the Remaining Elements of Shareholder
Fraud .......................................................................................................... 10

II.  Plaintiff's State and Federal Disabilities Discrimination Claims are Timely ............ 12

III.  Plaintiff's Wrongful Discharge and Promissory Estoppel Claims are Sufficiently
Pleaded................................................................................................................ 15

CONCLUSION............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*ACA Fin. Guaranty Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008) .................................................................................................. 2

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) ............................................................................................... 3, 8

*Angeles-Sanchez v. Alvarado*,
  993 F.2d 1530 (1st Cir. 1993) ......................................................................................... 12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 1

*Avalanche IP, LLC v. FAM, LLC*,
  No. 20-CV-10102-ADB, 2021 WL 149258 (D. Mass. Jan. 15, 2021) ................................... 6

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir.1990) ................................................................................................... 4

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ............................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 1, 2

*Bos. Exec. Helicopters, LLC v. Maguire*,
  196 F. Supp. 3d 134 (D. Mass. 2016) ................................................................................... 2

*Crowell v. Ionics, Inc.*,
  343 F. Supp. 2d 1 (D. Mass. 2004) ..................................................................................... 8, 9

*Del. State Coll. v. Ricks*,
  449 U.S. 250 (1980) ........................................................................................................... 12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ........................................................................................................... 10

*Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ............................................................................................................. 2

*Flesner v. Tech. Commc'ns Corp.*,
  410 Mass. 805, 575 N.E.2d 1107 (1991) ......................................................................... 16, 17

*Ganino v. Citizens Util. Co.*,
  228 F.3d 154 (2d Cir. 2000) ................................................................................ 5

*Gooley v. Mobil Oil Corp.*,
  851 F.2d 513 (1st Cir. 1988) ............................................................................... 2

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ............................................................................... 3

*Gross v. Summa Four, Inc.*,
  93 F.3d 987 (1st Cir. 1996) ................................................................................. 4

*In re Am. Apparel, Inc. S'holder Litig.*,
  855 F.Supp.2d 1043 (C.D. Cal. 2012) ............................................................... 5

*In re BP P.L.C. Sec. Litig.*,
  922 F. Supp. 2d 600 (S.D. Tex. 2013) .............................................................. 12

*In re Cabletron Sys.*,
  311 F.3d 11 (1st Cir. 2002) ................................................................................. 4

*In re Stone & Webster, Inc., Sec. Litig.*,
  414 F.3d 187 (1st Cir. 2005) ............................................................................... 8

*In re WorldCom, Inc. Sec. Litig.*,
  294 F.Supp.2d 392 (S.D.N.Y. 2003) .................................................................. 9

*Lapin v. Goldman Sachs Grp., Inc.*,
  506 F.Supp.2d 221 (S.D.N.Y. 2006) .................................................................. 5

*Lewis v. City of Chicago*,
  560 U.S. 205 (2010) ........................................................................................... 13

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................. 10

*Meehan v. Med. Info. Tech., Inc.*,
  177 N.E.3d 917 (Mass. 2021) ........................................................................... 18

*Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*,
  523 F.3d 75 (1st Cir. 2008) ................................................................................. 2

*Pub. Emps. Ret. Sys. Of Miss. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ......................................................................... 8, 10

*Ross v. Career Educ. Corp*.,
   No. 12 C 276, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) ........................................ 5

*Sullivan v. Pre Holdings, LLC*,
   No. CV 21-40078-TSH, 2022 WL 21769757 (D. Mass. Feb. 3, 2022).................................... 2

*Svensson v. Putnam Invs. LLC*,
   558 F. Supp. 2d 136 (D. Mass. 2008) .................................................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*.,
   551 U.S. 308 (2007)................................................................. 8

*Washtenaw County Emples. Ret. Sys. v. Avid Tech., Inc*.,
   28 F. Supp. 3d 93 (D. Mass. 2014) ......................................................... 4

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A)............................................................... 11

15 U.S.C. § 78u–4(b)(1) .................................................................. 3

15 U.S.C. § 78u–4(b)(2) ............................................................... 3, 8

15 U.S.C. § 78u–4(b)(1)(A).............................................................. 4

15 U.S.C. § 78u–4(b)(1)(B).............................................................. 5

**Regulations**

Fed. R. Civ. P. 12(b)(6) ................................................................... 1

**Other Authorities**

Secretary-General's remarks at launch of report of High-Level Expert Group on Net-Zero
   Commitments, https://www.un.org/sg/en/content/sg/speeches/2022-11-08/secretary-generals-
   remarks-launch-of-report-of-high-level-expert-group-net-zero-commitments%C2%A0........... 6

UNGC, CLIMATE Brief, https://unglobalcompact.org/take-action/20th-anniversary-
   campaign/uniting-business-to-tackle-covid-19/climate (last accessed, Nov. 17, 2024)............. 8

## INTRODUCTION

On August 6, 2024, Kip Lyall filed the Complaint individually and jointly with others similarly situated. *See* ECF No. 1. The key causes of action arise from the Plaintiff's wrongful termination by the Defendants after he spoke out against their greenwashing practices and failure to align their business operations with their publicly stated environmental sustainability pledges. On October 16, 2024, Defendants filed a motion to dismiss. ECF No. 12.

Where, as here, the Court must make all factual inferences in Plaintiff's favor and accept his alleged facts as true, it is clear that Defendants' Motion should be denied in its entirety. As summarized more fully below, Plaintiff's Complaint includes specific factual allegations of Defendants' unlawful conduct which led to wrongful termination. Moreover, the Complaint ties these factual allegations to the elements of each of Plaintiff's claims. Accordingly, Plaintiff has sufficiently pleaded his securities fraud, disability discrimination, and wrongful termination claims, and dismissal is not warranted pursuant to Fed. R. Civ. P. 12(b)(6). To the extent any of the claims need to be buttressed with additional allegations, Plaintiff requests an opportunity to amend the complaint to cure any deficiencies.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The court must accept the plaintiff's plausible factual allegations as true, except with respect to legal conclusions, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*; *see also Bos. Exec. Helicopters, LLC v. Maguire*, 196 F. Supp. 3d 134, 139 (D. Mass. 2016).

The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Sullivan v. Pre Holdings, LLC*, No. CV 21-40078-TSH, 2022 WL 21769757, at *2 (D. Mass. Feb. 3, 2022) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 577). Legal standards specific to the Private Securities Litigation Reform Act ("PSLRA") and fraud claims are explained in subsequent sections.

## ARGUMENTS

Defendants' Motion to Dismiss is rife with assumptions on factual determinations which are inappropriate for adjudication at the pleading stage. First, Plaintiff has sufficiently stated violations of the Securities Exchange Age (See Compl. ¶¶ 136-145). Second, Plaintiff's disability discrimination claim is timely, and at the very least, a question of fact remains as to the timeliness. Third, Plaintiff has plausibly alleged wrongful discharge and promissory estoppel claims.

I.    **Plaintiff's claim under Section 10(b) and Rule 10b-5 of the Exchange Act are Sufficiently Pled**

A claim for securities fraud under section 10(b) and Rule 10b–5 are sufficient when the following elements are alleged: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp*., 523 F.3d 75, 85 (1st Cir. 2008). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976); *ACA Fin. Guaranty Corp. v. Advest, Inc.*,

512 F.3d 46, 58 (1st Cir. 2008). This circuit has held that a plaintiff can demonstrate scienter by showing that defendants either "consciously intended to defraud, or that they acted with a high degree of recklessness." *Aldridge v. A.T. Cross Corp*., 284 F.3d 72, 82 (1st Cir. 2002).

Securities fraud allegations also must meet the standards of Federal Rule of Civil Procedure 9(b) and the PSLRA, which imposes heightened pleading requirements on private securities litigation. The PSLRA requires that when alleging that a defendant made a material misrepresentation or omission, a complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). If the allegation is "made on information and belief," then the complaint must "state with particularity all facts on which that belief is formed." *Id.* With respect to scienter, the complaint must, for "each act or omission ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2) (emphasis added). This requirement that plaintiffs plead facts giving rise to a strong inference of scienter differs from the general rule applied to other cases that a reasonable inference is sufficient to survive a Rule 12(b)(6) motion; in the PSLRA "Congress has effectively mandated a special standard for measuring whether allegations of scienter survive a motion to dismiss." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195 (1st Cir. 1999).

The Complaint thoroughly highlights the discrepancies between Defendants' public climate pledges and their actual business practices. *See, e.g.,* Compl. ¶¶ 12, 40, 43-45. The Complaint further details how Defendants' misrepresentations about environmental sustainability commitment misled shareholders, consumers, the scientific community, and the public. This misleading conduct resulted in Plaintiff and similarly situated individuals relying on false

information, which formed the basis for their decisions regarding investment and professional actions. *Id.* ¶ 9. The Complaint also pleads each element of this claim as follows:

### A.    The Complaint Sufficiently Pleads Material Misrepresentation and Omissions

The Complaint alleges material misrepresentations and omissions. Statements are material if a reasonable investor would have viewed it as "having significantly altered the total mix of information made available." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir. 1996) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)) (internal quotation marks omitted). The PSLRA provides that a misleading statement or omission is alleged when plaintiff claims that defendant made "an untrue statement of a material fact," 15 U.S.C. § 78u–4(b)(1)(A), or "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading," *id.* § 78u–4(b)(1)(B). "While a company need not reveal every piece of information that affects anything said before, it must disclose facts, 'if any, that are needed so that what was revealed [before] would not be so incomplete as to mislead.'" *In re Cabletron Sys.*, 311 F.3d 11, 36 (1st Cir. 2002) (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir.1990) (en banc)). Furthermore, materiality is itself a mixed question of law and fact—as the Supreme Court recognized in *TSC Industries*, a materiality determination "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." 426 U.S. at 450; *see also Washtenaw County Emples. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93 (D. Mass. 2014) (noting that rigorous standards for pleading fraud do not require plaintiffs to present evidence at the pleading stage, as long as the complaint sufficiently identifies fraudulent statements).

Defendants take the position that their sustainability related statements are nothing more than puffery, and should be deemed immaterial. Such assertion is morally and legally troubling. Defendants made concrete and actionable statements about their sustainability commitments, including their pledge to UN's Net-Zero campaign goals, UN Race to Zero, and more. In reviewing the materiality of shareholder fraud claims, the claims should survive unless the misrepresentation is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Util. Co*., 228 F.3d 154, 162 (2d Cir. 2000).

As Plaintiff pleaded, Defendants' promises and commitment embedded in their Climate Pledge –which they not only touted but signed -- were not generalized forward-looking statements but actionable misrepresentations. Courts have routinely found various companies' misrepresentations about their compliance with corporate policy actionable. *See, e.g., In re Am. Apparel, Inc. S'holder Litig*., 855 F.Supp.2d 1043, 1049–50, 1066–67 (C.D. Cal. 2012) (statement that defendant company "made diligent efforts to comply with all employment and labor regulations" and that corporate policy was to "fully comply with its obligations to establish the employment eligibility of prospective employers under immigration laws" misled investors because company actually employed hundreds of illegal immigrants whom it later was required to terminate); *Ross v. Career Educ. Corp*., No. 12 C 276, 2012 WL 5363431, at *6 (N.D. Ill. Oct. 30, 2012) (statement that a school "carefully reviewed and modified [its] policies and practices for reporting job placement rates, admissions and advertising" misled investors as it was still misrepresenting its placement rates); *Lapin v. Goldman Sachs Grp., Inc*., 506 F.Supp.2d 221, 229–30 (S.D.N.Y. 2006) (statements by investment bank touting its "unbiased" research was false or misleading because analysts were beset by conflicts of interest).

Here, Defendants sustainability commitments are actionable because they represent a commitment, alignment, pledge and compliance with UN and other governing bodies' standards to achieve specific goals, prompting specific actions. Defendants' statement that it is pledging and committing to be aligned with the Net Zero and Sustainability Pledges while continuing to support new fossil fuel explorations forms the basis for investor fraud. *See also Avalanche IP, LLC v. FAM, LLC*, No. 20-CV-10102-ADB, 2021 WL 149258, at *7 (D. Mass. Jan. 15, 2021) (holding that FRCP 9(b)'s special pleadings standard for fraud was satisfied because a company's statement showing commitment to a certain action (i.e., contributing funding into plaintiff company's brand and maintain the branding to external consumers) was a promise, not merely a "[v]ague expression[ ] of hope and future expectation or mere opinion and puffery.")

In the Complaint and its exhibits, Plaintiff submitted the RGR reports which lists concrete examples of Defendants' misrepresentations and their actions that run counter to the statements. As one of many examples, when Defendants state in its Annual Report to shareholders that it is committed to Net Zero and UN Race to Zero *(see, e.g.,* Compl. ¶¶ 10-12), it is plausible that a shareholder will materially understand this to mean that Defendants are aligning its practice to the Net Zero and Race to Zero goals, because, as declared by the United Nations Secretary-General, "net-zero cannot be a mere public relations exercise."[1] Private entities have no obligation to participate in climate pledges or UN climate commitments; hence, when a company promises to, a reasonable shareholder would believe that the company's practices were aligned with its stated commitments. When a company commits to UN's Net Zero and Race to Zero, it means: "Non-state actors cannot claim to be net zero while continuing to build or invest in new fossil fuel supply. Non-state actors cannot lobby to undermine ambitious government climate policies either directly

---

[1] https://www.un.org/sg/en/content/sg/speeches/2022-11-08/secretary-generals-remarks-launch-of-report-of-high-level-expert-group-net-zero-commitments%C2%A0.

or through trade associations or other bodies. Instead, they must align their advocacy, as well as their governance and business strategies with their climate commitments."[2] Yet, in direct contravention to the Defendants' stated Net Zero and Race to Zero pledges, the Complaint plausibly alleges that Defendants provide services and tools to support new fossil fuel exploitation, while also paying policy makers who deny climate change. Compl. ¶¶ 10-12.

Moreover, Defendants assert that "Plaintiff never pleads that RELX represented to investors that its sustainability measures included considering how readers might use the information it published . . ." Def.s Br. at 9. However, Defendants boldly stated to their investors in the Annual Report cited in the Complaint that their sustainability efforts consist of publishing contents that support clean energy and not contributing to new fossil fuel exploration:

> "Elsevier is working to support clean energy. In 2022, Elsevier launched a free report titled Pathways to Net Zero . . .The books team further implemented its Energy with Purpose mission statement <u>to only commission new content that advances the energy transition and reduction of CO2 emissions</u>. . . Leadership made the decision to close one hydrocarbon journal and transition remaining titles with updated aims and scope . . . explicitly calling for research related to UN Sustainable Development Goal (SDG) 7, Affordable and Clean Energy. . . Elsevier's Geofacets . . . focused on discovering efficiencies in established energy projects rather than new fossil fuel exploration."

RELX 2022 Annual Report, at 74 (as referenced in Compl. at 3, n. 2).

In yet another example, the Complaint asserts that Defendants stated to shareholders that it is adhering to the United Nations Global Compact (UNGC), "ensuring that no function is conflicting with company sustainability commitments and objectives." Compl. at 12, Table 1. Yet, the Defendants' assurance was false because it was out of line with the UNGC's stance on fossil

---

[2] UN, *Integrity Matters Net Zero Commitments by Businesses*, https://www.un.org/sites/un2.un.org/files/high-level_expert_group_n7b.pdf

fuel: "Committing to going 100% renewable" and "divesting from fossil fuels."[3]  Hence, viewing the allegations in the light most favorable to the Plaintiff, the Complaint adequately pleads that the statements made by Defendants were material and false.

**B.    The Complaint Sufficiently Pleads Scienter**

Scienter can be proven by showing that the defendants either knowingly made false statements or acted recklessly by disregarding the risk of misleading investors. *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1 (D. Mass. 2004).

For scienter, the complaint must, "with respect to each act or omission ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added); *see also Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 86 (1st Cir. 2008). Such inference is plausible from allegations that a defendant had a motive to make misleading statements for financial gains. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007) ("[M]otive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference," but "the absence of a motive allegation is not fatal" to a claim). A complaint will survive a motion to dismiss if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Id*. In reviewing scienter allegations, courts can consider the totality of circumstances and infer from circumstantial evidence. *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187 (1st Cir. 2005). Defendants' issuance of statements while knowing facts "suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *Aldridge v. A.T. Cross*, 284 F.3d 72, 86 (1st Cir. 2002).

---

[3] UNGC, CLIMATE Brief, https://unglobalcompact.org/take-action/20th-anniversary-campaign/uniting-business-to-tackle-covid-19/climate (last accessed, Nov. 17, 2024)

The Complaint alleges that RELX knew or intentionally disregarded their own misrepresentation regarding greenwashing. The Complaint highlights that Defendants knowingly and intentionally made commitments and pledges (explained in the previous section). And, between September 2021 and April 2023, the Responsible Growth Report Committee (RGRC), led by the Plaintiff, repeatedly brought RELX's greenwashing practices to the company's attention. Compl. ¶ 42. The RGRC published six Responsible Growth Reports (RGRs), which detailed how RELX's policies and business practices contradicted their public-facing sustainability pledges. *See* Compl. ¶¶ 41, 43, 65 (Plaintiff leading an internal effort to expose the misalignment between Defendants' business practices and their sustainability pledges, presenting findings to the company). The Complaint alleges that Defendants knew or recklessly ignored the material misstatements when they dismissed and retaliated against Plaintiff and employees who brought such concerns to the Defendants' awareness, while continuing to make material misrepresentations to investors and the public. *See, e.g.*, Compl. ¶¶ 65-75. Moreover, the Complaint alleges that RELX has never conducted an independent third-party investigation as required for ethics complaints points to a deliberate attempt to avoid uncovering the truth about their business practices, nor took corrective action in response to the RGRs. *See id*. ¶¶ 64-65.

Another way to plead scienter is to allege defendants had an incentive and benefit by making misrepresentations. *See, e.g., In re WorldCom, Inc. Sec. Litig*., 294 F.Supp.2d 392, 412 (S.D.N.Y. 2003) (factual allegations that the defendants would benefit from fraud sufficient for scienter requirement); *Crowell v. Ionics, Inc*., 343 F. Supp. 2d 1 (D. Mass. 2004) (testimonies and other circumstantial evidence, such as company practices like inflating revenue and shuffling products, were sufficient to infer fraud at the pleading stage).

Among other reasons, the Complaint alleges that Defendants were motivated to greenwash their operations because it would be beneficial to them in terms of marketing to various sectors of consumers (*i.e.,* Defendants can gain benefit by asserting science-based climate pledges to the academic community while benefitting by serving the needs of oil and gas companies); appealing to long-term investors (Compl. ¶ 47 "Investors increasingly believe companies that perform well on ESG are less risky, better positioned for the long term and better prepared for uncertainty.").

### C.    The Complaint Adequately Pleads the Remaining Elements of Shareholder Fraud

The Complaint adequately pleads "a connection with the purchase or sale of a security; reliance; economic loss; and loss causation" and any facts beyond the alleged are appropriate to be sought during discovery. *See Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp*., 523 F.3d 75, 85 (1st Cir. 2008). Loss causation, unlike scienter, is measured against Rule 8(a)'s liberal notice pleading standard. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005); *Pub. Emps. Ret. Sys. Of Miss. v. Amedisys, Inc*., 769 F.3d 313, 320 (5th Cir. 2014). Rule 8(a) notice pleading does "not . . . impose a great burden," and for loss causation requires only that plaintiffs "provide[] the defendants with notice of what the relevant economic loss might be or of what the causal connection might be." *Dura*, 544 U.S. at 346-47. As such, "it is often inappropriate to use a Rule 12(b)(6) motion as a vehicle to resolve disputes over 'loss causation.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 n.35 (5th Cir. 2009).

The Complaint sufficiently lays out the Plaintiff's reliance on Defendants' misrepresentations that Defendants would be responsive to environmental concerns. *See, e.g.,* Compl. ¶ 17 (describing how Plaintiff, as a shareholder of RELX stocks, felt misled by the Defendants' business practices, which contradicted their public statements); *Id* ¶ 50-52 (alleging that *before he purchased the stock*, Plaintiff believed that the company was responsive to concerns

about environmental human rights, he believed in Defendants' CSR goals and their statements, and that he believed that he could further these environmental causes as an employee and a public citizen) (emphasis added); *Id.* ¶ 47 (noting that investors increasingly value companies with strong ESG (Environmental, Social, Governance) performance, and Defendants' misrepresentations misled investors to believe RELX was committed to sustainability).

The Complaint alleges that Plaintiff purchased shares of RELX on March 8, 2021, making him an investor in the company. *Id.* ¶ 4. At the time of purchase, Plaintiff knew very little about the company's violation of its climate pledges and alleges that he believed Defendants were responsive to concerns about environmental human rights. *Id.* ¶ 50. *When he purchased the shares of RELX* in March 2021, he alleges that he believed in the company's Corporate Social Responsibility goals and statements, and that being a shareholder and employee, he could contribute positively to the company's sustainability efforts. *Id.* ¶¶ 50-52. After the purchase of the stocks, Plaintiff discovered much of what he now knows about Defendants' specific business practices such as their active support for and participation in fossil fuel expansion. *Id.* ¶ 53. Plaintiff's Certification pursuant to 15 U.S.C. § 78u-4(a)(2)(A) is attached as **Exhibit A.**

The Complaint sufficiently alleges that Plaintiff and the class suffered damages because they paid artificially inflated prices for RELX stock, believing the company performed well on ESG criteria, making it a safer, long-term investment. Plaintiff further alleges that this harm is directly linked to the Defendants' misleading ESG statements. *Id.* ¶ 141 ("Defendants' misleading statements inflated RELX's stock price, causing investors, including the Plaintiff, to purchase shares at prices that were artificially inflated due to the company's false claims regarding its environmental performance.").[4]

---

[4] If and amended pleading is permitted and deemed necessary, Plaintiff would add that he would not have purchased the stocks at any price had he known at the time that the Company engaged in such greenwashing practices.

The Complaint further alleges that through the series of disclosures regarding the company's greenwashing practices (e.g. Guardian article referenced in Compl. ¶68), Plaintiffs suffered financial loss due to the loss of value of Defendants' stocks. While the specific method of calculations of damages has not been specified, Plaintiffs argue that this is an issue to be raised at fact discovery (i.e., gains and losses during class period before and after the disclosures of the misrepresentation) and through expert discovery (i.e., calculation how much loss is attributed to the misrepresentations in the relevant class period). "No more [than this] is required at the pleading stage." *In re BP P.L.C. Sec. Litig.*, 922 F. Supp. 2d 600, 638 (S.D. Tex. 2013).

## II.    Plaintiff's State and Federal Disabilities Discrimination Claims are Timely

Defendants allege that Plaintiff's claims under the Americans with Disabilities Act ("ADA") and Massachusetts Fair Employment Practices Act ("FEPA") are untimely; specifically, that "Plaintiff received notice of termination on June 7, 2023, so he should have filed an administrative charge on or before April 2, 2024. He did so two months late on June 2, 2024, and his statutory discrimination claims are thus time-barred." Def.'s Mot. at 15-16.

In so arguing, Defendants claim that the 300-day period to file an administrative charge *always* begins to run on the official date of the notice of termination, and not on the last day of work, without exception or nuance. *See* Def.'s Mot. at 4, 15-17. Defendants cite three cases in support, each of which is distinguishable. First, in *Del. State Coll. v. Ricks*, the Supreme Court expressly noted that "the only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the [denial of] tenure decision was made and communicated to Ricks." 449 U.S. 250, 258 (1980). Defendants fail to recognize that the First Circuit clarified and distinguished the *Ricks* opinion more than a decade later. In *Angeles-Sanchez v. Alvarado*, the First Circuit noted that the Supreme Court in *Ricks* "placed great emphasis on the finality and certainty

of the college's decision to deny tenure, noting that it capped an 'unbroken array of negative decisions.' . . . We therefore understand *Ricks* to require that a decision to terminate employment must be 'unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination.'" 993 F.2d 1530, *3 (1st Cir. 1993). Moreover, the Supreme Court further clarified *Ricks* and its progeny in *Lewis v. City of Chicago*, in which it noted that "those cases establish only that a Title VII plaintiff must show a 'present violation' within the limitations period." 560 U.S. 205, 216 (2010).

At this early stage in litigation, Defendants cannot state that the original notice of termination was "unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination." *Angeles-Sanchez,* 993 F.2d 1530, *3. "In an employment discrimination case, the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act. If notice is equivocal, however, the clock may be tolled or simply never start to tick." *Svensson v. Putnam Invs. LLC*, 558 F. Supp. 2d 136, 142 (D. Mass. 2008) (citation omitted). Plaintiff alleges that he took medical leave for his disability pursuant to the Paid Family Medical Leave Act in June 2023, and was terminated immediately after his leave expired in August. *See* Compl. ¶¶ 96 & 98. This constituted yet another discriminatory act. Thus, although Plaintiff has alleged that he received an initial notice of termination on June 7, 2023, he properly requested and was granted this leave from Defendants and was terminated for this additional reason on August 8, 2023.

The Complaint alleges that Plaintiff experienced a significant decline in mental health, including anxiety, helplessness, grief, and despair, due to the Defendants. Specifically, a hostile work environment, combined with the company's refusal to acknowledge or rectify its harmful actions, contributed to the deterioration of Plaintiff's mental health. *Id.* ¶ 22. The Complaint alleges

that in March 2023, Plaintiff was diagnosed with "adjustment disorder with anxiety," attributed to the hostile work environment and his struggle to maintain integrity at work. *Id.* ¶ 23. Based on recommendations from his mental health provider, Plaintiff requested accommodations from the Defendants. These included limiting mandatory meetings to 45 minutes and requiring one business day's notice for such meetings to help manage his anxiety and mental health. *Id.* ¶ 24. The Complaint alleges that, in May 2023, Plaintiff emailed the VP of Publishing Operations, requesting these accommodations for his mental health, which were prescribed by his psychotherapist, *id.* ¶ 92, and that the VP stated she would share it with HR, *id.* ¶ 93. The Complaint alleges that, despite Plaintiff's request for accommodations, Defendants failed to provide the requested accommodations. *Id.* ¶ 24. On June 7, 2023, the Mr. Lyall had a meeting without notification about the nature of the meeting, and, to his surprise, the individuals who had engaged in harassing and retaliatory practices were present at the meeting. *Id.* ¶¶ 94-95. Mr. Lyall simultaneously requested medical leave of absence via PFMLA due to the work environment and harassment. ¶ 96. The Complaint emphasizes that only after the medical leave was granted did Mr. Lyall received a termination letter from the US Employee Relations Lead at RELX. *Id.* ¶ 97. On August 8, 2023, Mr. Lyall was terminated upon the expiration of his PFMLA leave. *Id.* ¶ 98.

Discovery is required to determine whether the June 7, 2023 notice of termination that Plaintiff pleads in his Complaint was unequivocal. For example, discovery will show whether the notice had a date or condition certain for Plaintiff's termination; if not, then it appears that his termination was not an absolute certainty and, if so, then discovery is also required to explain why Defendants granted Plaintiff leave and then terminated him upon his return. Moreover, Defendants' motion warrants denial on this ground and at this early stage particularly where the meeting itself was defective in terms of accommodating him.

As Plaintiff pleaded:

> Per [his] mental health professional's written letter, Plaintiff
> requested to the Defendants the accommodation of limiting
> mandatory meetings to a maximum of 45 minutes as "additional
> time poses a greater risk to [Plaintiff's] mental health" and that
> Plaintiff "be given a minimum of one business day advanced notice
> of any mandatory meetings.

Compl. ¶ 24; *see also id.* ¶ 92. Then, Plaintiff pleaded that "A few days after Mr. Lyall requested

the accommodations meeting boundaries, Cell Press management set a one-on-one meeting with

Mr. Lyall on June 7, 2023 which appeared to be an ordinary business meeting. He was given no

pre-notification about the nature or participants of the meeting aside from his manager." *Id.* ¶ 94.

Moreover, Plaintiff pleaded that when he "signed into the meeting on June 7, 2023, the individuals

who had engaged in harassing and retaliatory practices were present, specifically the MD/SVP."

*Id.* ¶ 95. Defendants failed to hold a termination meeting with Plaintiff within the appropriate

parameters of accommodation, and he was forced to leave early as a result. This further

demonstrates that the purported termination meeting was not "unequivocal." In any event,

Defendants thereafter continued to retaliate against Plaintiff "by sending letters containing legal

threats and demanding that Plaintiff cease publishing his opinions regarding Defendants'

greenwashing conduct." *Id.* ¶ 99. For these reasons, Plaintiff's claims are timely.

### III.    Plaintiff's Wrongful Discharge and Promissory Estoppel Claims are Sufficiently Pleaded

Plaintiff's wrongful discharge and promissory estoppel claims also do not warrant

dismissal at this early stage in litigation. In addition to the detailed factual allegations set forth

throughout the Complaint, Plaintiff specifically pleaded as follows with respect to his claim for

wrongful discharge in violation of public policy:

- Under Massachusetts common law, an employer may lawfully
  terminate a relationship with an at-will employee at any time—for

any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind. [Compl. ¶ 129]

- A limited exception to this general rule exists when employment is terminated contrary to a clearly established public policy. Under the narrow exception, redress is available for employees who are terminated for asserting a legally guaranteed right. [*Id.* ¶ 130]

- Beyond these recognized categories, the public policy exception may extend in some "exceptional cases" to employees "terminated for performing important public deeds, even though the law does not absolutely require performance of such a deed." *Flesner v. Tech. Commc'ns Corp.*, 410 Mass. 805, 811, 575 N.E.2d 1107 (1991). [*Id.* ¶ 131]

- Plaintiff was unlawfully terminated by Defendants for refusing to conform to the Defendants' business practices which allegedly amounted to securities fraud and consumer fraud. [*Id.* ¶ 132]

Plaintiff further pleaded as follows with respect to his promissory estoppel claim:

- During his employment, the Defendants had in place various written policies that were intended to promote environmental sustainability, and Defendants had procedures to protect employees who submit ethics complaints and investigate the complaints. The Defendants also had in place written policies regarding the prevention of harassment at the workplace. [*Id.* ¶ 147]

- The Plaintiff relied on and materially and adequately performed his duties and advocacy within the workplace. [*Id.* ¶ 148]

- Defendants breached their promises to the Plaintiff and instead retaliated against him for going through the written policies, resulting in his termination. [*Id.* ¶ 149]

The Complaint also alleges that Defendants pledged to reduce greenhouse gas emissions and align with the Paris Climate Agreement, committing to sustainability goals in their SEC filings and public statements, which were part of the written policies Plaintiff relied upon in advocating for better climate practices. *Id.* ¶¶ 10-11. For instance, the Complaint refers to RELX's Code of Ethics Policy, which prohibits efforts to defraud shareholders or make false or misleading statements about business practices, including those related to products, services, sales, financial

16

condition, and compliance practices. The policy is intended to uphold transparency and ethical behavior within the company, or the Code of Ethics as part of his submission of an ethics complaint in April 2021, where he raised concerns about Defendants' greenwashing practices. *Id.* ¶¶ 54-55.

In his Complaint, Plaintiff also references RELX's internal policies that Plaintiff believed were intended to protect employees from retaliation or harassment for raising ethics concerns. These policies were a basis for Plaintiff's reliance on the company's stated commitments to ethical behavior and whistleblower protections. *Id.* ¶ 61. The Complaint further details the company's ethical complaint procedures, suggesting that Defendants were not adhering to their written policies regarding the handling of internal complaints about unethical business practices. *Id.* ¶¶ 62-63. Therefore, the complaint alleges that Defendants breached these promises by retaliating against Plaintiff for following these policies and procedures, resulting in his wrongful termination, causing Plaintiff irreparable harm, including loss of compensation, reputational damage, and emotional distress. *Id.* ¶¶ 149-50.

Nevertheless, Defendants argue that this alleged conduct does not rise to a vaguely-specified level necessary to invoke this public policy exception nor any theory of estoppel. This is a contention that is inappropriate to adjudicate at this stage. As for the public policy exception, guidance from Massachusetts' highest court notes that the exception may extend to employees "terminated for performing important public deeds, even though the law does not absolutely require performance of such a deed." *Flesner*, 410 Mass. at 811. As for promissory estoppel, Plaintiff pleaded multiple specific policies that Defendants maintain[ed] regarding environmental sustainability, and identified another of Defendants' policies that he relied on in his work environment: the prevention of harassment in the workplace. Defendants' misrepresentations through these purported policies resulted in Plaintiff and similarly situated individuals relying on

false information, which formed the basis for their decisions regarding investment and professional actions. *See* Compl. ¶ 9.

Moreover, Defendants rely heavily on *Meehan v. Med. Info. Tech., Inc.*, 177 N.E.3d 917 (Mass. 2021). But the Supreme Judicial Court of Massachusetts there did not limit application of the public policy exception to "being a witness in a government investigation, serving on a jury, [or] testifying pursuant to a subpoena," as Defendants suggest. *See* Def.'s Motion at 19. Instead, it noted that, "where there has been no legislative recognition of the right, an examination of the importance and public nature of the policy at issue in the discharge of the at-will employee is necessary to determine whether it merits protection." *Meehan*, 177 N.E.3d at 922. As such, whether this exception applies is highly fact specific and to be determined on a case-by-case basis.

For these reasons, Plaintiff's wrongful termination and promissory estoppel claims are sufficiently pleaded, and Defendants' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety, and grant such other and further relief as the Court deems just.

Dated: November 19, 2024                          Respectfully Submitted,

                                                  By:

                                                  /s/ Juyoun Han
                                                  Juyoun Han, Esq.
                                                  Eric Baum, Esq.
                                                  Andrew Clark, Esq.
                                                  **Eisenberg & Baum LLP**
                                                  24 Union Square East, Penthouse
                                                  New York, NY 10003
                                                  212-353-8700 (tel.)
                                                  *Attorneys for Plaintiff*