**Juyoun Han (seeking pro hac admission)**
**Eric Baum (seeking pro hac admission)**
Eisenberg & Baum LLP
24 Union Square East, Penthouse
New York, NY 10003
Telephone: 212-353-8700
jhan@eandblaw.com
*Attorneys for Plaintiff*

**Angie I. Martell**
Iglesia Martell Law Firm PLLC
2723 S. State Street, Suite 150
Ann Arbor, MI 48104
Telephone: 734-369-2331
angie@iglesiamartell.com
*Local Counsel*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIP LYALL, on behalf of himself and all others similarly situated,<br><br>                                   *Plaintiff*,<br><br>        v.<br><br>ELSEVIER INC., RELX PLC, AND CELL PRESS INC.,<br><br><br>                                   *Defendants*. | Civ. No. 1:24-cv-12022-PBS |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: February 21, 2025

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION .......................................................................................................... 1

LEGAL STANDARD ..................................................................................................... 1

ARGUMENTS................................................................................................................ 2

    I.     Plaintiff's Securities Fraud Claims are Sufficiently Pled ............................................. 3

         A.     Plaintiff was Deceived by Defendants, and Gradually Learned about Defendants' Intentional Misrepresentations Regarding their Greenwashing Practice............................................................................................................ 4

         B.     The Amended Complaint Sufficiently Pleads That Defendants Made Material Misrepresentation and Omissions with Contemporaneous Knowledge of Falsity ........................................................................................................... 7

         C.     The Amended Complaint Sufficiently Pleads Scienter.................................... 12

         D.     The Amended Complaint Pleads that Defendants Knew, or Recklessly Ignored, Material Adverse Information ......................................................... 13

         E.     The Amended Complaint Adequately Pleads the Remaining Elements of Shareholder Fraud ............................................................................................. 14

    II.     Plaintiff's State and Federal Disabilities Discrimination Claims are Timely ............ 12

    III.    Plaintiff's Wrongful Discharge and Promissory Estoppel Claims are Sufficiently Pleaded.................................................................................................................. 15

CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Fin. Guaranty Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008) ........................................................................ 3

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002) .................................................................. 3, 13

*Angeles-Sanchez v. Alvarado*,
    993 F.2d 1530 (1st Cir. 1993) ................................................................. 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 2

*Avalanche IP, LLC v. FAM, LLC*,
    No. 20-CV-10102-ADB, 2021 WL 149258 (D. Mass. Jan. 15, 2021) ......... 9

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir.1990) ........................................................................ 7

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) .................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 2

*Bos. Exec. Helicopters, LLC v. Maguire*,
    196 F. Supp. 3d 134 (D. Mass. 2016) ....................................................... 2

*Crowell v. Ionics, Inc.*,
    343 F. Supp. 2d 1 (D. Mass. 2004) .................................................. 12, 14

*Del. State Coll. v. Ricks*,
    449 U.S. 250 (1980) ................................................................................ 16

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................ 14

*Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ................................................................................3f

*Fanucchi v. Enviva Inc.*,

2024 WL 3302564, at *11 (D. Md. July 3, 2024) ........................................................... 9

*Flesner v. Tech. Commc'ns Corp.*,
   410 Mass. 805, 575 N.E.2d 1107 (1991) ................................................................. 20

*Ganino v. Citizens Util. Co.*,
   228 F.3d 154 (2d Cir. 2000) ........................................................................................ 8

*Gooley v. Mobil Oil Corp.*,
   851 F.2d 513 (1st Cir. 1988) ....................................................................................... 2

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) ....................................................................................... 4

*Gross v. Summa Four, Inc.*,
   93 F.3d 987 (1st Cir. 1996) ......................................................................................... 7

*In re Am. Apparel, Inc. S'holder Litig.*,
   855 F.Supp.2d 1043 (C.D. Cal. 2012) ....................................................................... 8

*In re BP P.L.C. Sec. Litig.*,
   922 F. Supp. 2d 600 (S.D. Tex. 2013) ...................................................................... 15

*In re Cabletron Sys.*,
   311 F.3d 11 (1st Cir. 2002) ........................................................................................ 7

*In re Moody's Corp.*,
   599 F.Supp.2d 493, 509 (S.D.N.Y.2009) ................................................................. 12

*In re Stone & Webster, Inc., Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005) ..................................................................................... 13

*In re WorldCom, Inc. Sec. Litig.*,
   294 F.Supp.2d 392 (S.D.N.Y. 2003) ........................................................................ 14

*Karth v. Keryx Biopharmaceuticals, Inc.*,
  6 F.4th 123, 139 (1st Cir. 2021) ................................................................................. 6

*Lapin v. Goldman Sachs Grp., Inc.*,
  506 F.Supp.2d 221 (S.D.N.Y. 2006)85

*Lewis v. City of Chicago*,
  560 U.S. 205 (2010) .................................................................................................. 13

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ..................................................................................... 10

*Meehan v. Med. Info. Tech., Inc.*,
   177 N.E.3d 917 (Mass. 2021) ............................................................................ 20

*Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*,
   523 F.3d 75 (1st Cir. 2008) .................................................................................. 3

*NPS LLC v. Ambac Assurance Corp.*,
   706 F. Supp. 2d 162, 173 (D. Mass. 2010), ..................................................... 11

*Pub. Emps. Ret. Sys. Of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ....................................................................... 12, 14

*Ross v. Career Educ. Corp.*,
   No. 12 C 276, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) ............................. 5

*Sullivan v. Pre Holdings, LLC*,
   No. CV 21-40078-TSH, 2022 WL 21769757 (D. Mass. Feb. 3, 2022)............... 2

*Svensson v. Putnam Invs. LLC*,
   558 F. Supp. 2d 136 (D. Mass. 2008) ............................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*.,
   551 U.S. 308 (2007) .......................................................................................... 12

*Washtenaw County Emples. Ret. Sys. v. Avid Tech., Inc.*,
   28 F. Supp. 3d 93 (D. Mass. 2014) .................................................................... 4

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A)..................................................................................... 11

15 U.S.C. § 78u–4(b)(1) .......................................................................................... 3

15 U.S.C. § 78u–4(b)(2) ....................................................................................... 3, 8

15 U.S.C. § 78u–4(b)(1)(A) ..................................................................................... 4

15 U.S.C. § 78u–4(b)(1)(B) ..................................................................................... 5

**Regulations**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1

## INTRODUCTION

On August 6, 2024, Kip Lyall filed the Complaint individually and jointly with others similarly situated. *See* ECF No. 1. On January 7, 2025, the Plaintiffs filed an Amended Complaint (ECF No. 25, "Amended Complaint" or AC). Defendants brought this second Motion to Dismiss on February 7, 2025 (ECF No. 28-29).

The key causes of action arise from Defendants' misrepresentations to the public, their shareholders, and their employees that they are committed and pledged to act on environmental sustainability, while their intentions, actions, and profits gained behind the scenes tell a shockingly different narrative. *See generally,* AC. It also raises claims related to disability discrimination and wrongful termination of Plaintiff Kip after he spoke out against Defendants' greenwashing practices and failure to align their business operations with their publicly stated environmental sustainability pledges. On October 16, 2024, Defendants filed a motion to dismiss. ECF No. 12.

Defendants' motion to dismiss, twice filed, asks this court to make factual assumptions in their favor, contrary to the standard of review of this motion. Defendants also deploy a short-ranged tactic of stating which factual statements were public or non-publicly disclosed at a specific moment of time, in order to essentially argue that their statements may have been momentarily not-false at specific fragments of time. This argument lacks logic and merit, and further misreads the context of a multi-year narrative of lies that the Plaintiff witnessed as an insider of Defendants' Company and has thoroughly chronicled in his Amended Complaint.  Moreover, the Complaint ties these factual allegations to the elements of each of Plaintiff's claims. Accordingly, Plaintiff has sufficiently pleaded his securities fraud, disability discrimination, and wrongful termination claims, and dismissal is not warranted pursuant to Fed. R. Civ. P. 12(b)(6). In addition, discovery

is required to determine whether Plaintiff's disability discrimination claims are timely. As such, Defendants' motion should be denied in its entirety.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The court must accept the plaintiff's plausible factual allegations as true, except with respect to legal conclusions, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bos. Exec. Helicopters, LLC v. Maguire*, 196 F. Supp. 3d 134, 139 (D. Mass. 2016).  The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Sullivan v. Pre Holdings, LLC*, No. CV 21-40078-TSH, 2022 WL 21769757, at *2 (D. Mass. Feb. 3, 2022) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 577).

## ARGUMENTS

Defendants' Second Motion to Dismiss is rife with assumptions on factual determinations which are inappropriate for adjudication at the pleading stage. First, Plaintiff has sufficiently stated violations of the Securities Exchange Act. Second, Plaintiff's disability discrimination claim is timely, and at the very least, a question of fact remains as to the timeliness. Third, Plaintiff has plausibly alleged wrongful discharge and promissory estoppel claims.

## I.    Plaintiff's Securities Fraud Claim is Sufficiently Pled

Defendants argue that Plaintiff's Securities Fraud Claim fails because (a) Plaintiff had knowledge of Defendants' greenwashing prior to purchasing the stocks; (b) damages or loss causation is insufficiently pled, and (c) Defendants' greenwashing does not amount to contemporaneously false material misrepresentation. In this section, Plaintiff sets forth relevant case law, the operative facts alleged, and legal arguments that defeat the Defendants' unconvincing arguments, and seeks that the Court reject this argument entirely.

A claim for securities fraud under section 10(b) and Rule 10b–5 are sufficient when the following elements are alleged: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp*., 523 F.3d 75, 85 (1st Cir. 2008). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976); *ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008). This circuit has held that a plaintiff can demonstrate scienter by showing that defendants either "consciously intended to defraud, or that they acted with a high degree of recklessness." *Aldridge v. A.T. Cross Corp*., 284 F.3d 72, 82 (1st Cir. 2002).

Securities fraud allegations also must meet the standards of Federal Rule of Civil Procedure 9(b)5 and the PSLRA, which imposes heightened pleading requirements on private securities litigation. The PSLRA requires that when alleging that a defendant made a material misrepresentation or omission, a complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). If the allegation is "made on information and belief," then the complaint must "state with particularity all facts on which that belief is formed." *Id.* With respect to scienter, the complaint

must, for "each act or omission ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. § 78u–4(b)(2) (emphasis added). This requirement that plaintiffs plead facts giving rise to a strong inference of scienter differs from the general rule applied to other cases that a reasonable inference is sufficient to survive a Rule 12(b)(6) motion; in the PSLRA "Congress has effectively mandated a special standard for measuring whether allegations of scienter survive a motion to dismiss." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195 (1st Cir. 1999).

### A. Plaintiff was Deceived by Defendants, and Gradually Learned about Defendants' Intentional Misrepresentations Regarding their Greenwashing Practice.

Defendants baldly assume (Def. Br. 11), with no citations to the pleadings, that Plaintiff Kip "admits he knew the facts that [t]he claims were suppressed when he bought his ADRs [stocks] and does not challenge a single statement before his purchase. . ." This is an incorrect reading of the Amended Complaint. The Amended Complaint thoroughly sets forth the Defendants' statements committing to sustainability goals and their contradictory business practices. *See, e.g.,* AC ¶¶ 11.

According to the AC, in 2020, Kip became more alert to being responsible about societal and environmental concerns which also coincided with the time of his promotion to a managerial position at Defendant Cell Press. *Id.* ¶ 62. He felt that Defendants' Corporate Social Responsibility could be fulfilled better and was concerned generally that the Defendants can do more toward this goal. He also had doubts about greenwashing practices generally, but believed that Defendants' will to promote climate sustainability was sincere and Plaintiff was willing to contribute to Defendants' CSR goals being. *Id.* ("Mr. Lyall believed in Defendants' CSR goals and statements and believed that more can be fulfilled.").

4

It is important to note that in late 2020 and in 2021 at the point of Kip's purchase of the RELX stocks, what Plaintiff "knew" and "believed" was that Defendants were committed to climate sustainability goals per their statements and being a signatory[1] to the UNGC's principles. *Id*. Kip believed that Defendants can still do more to align their words with actions. *Id*.  But throughout time since purchasing the stocks, Kip came to gradually unravel the "truth": that Defendants did not intend to upkeep any commitment to the various climate sustainability pledges, that those promises and pledges were merely window-dressing to attract consumers and investors, and Defendants never intended in the past or in the future to carry out the UN Net Zero or UNGC climate principles. As of March 2021, Kip was still under the belief and knowledge that Defendants were willing to and intending to promote environmental sustainability, and to support these goals he believed he should take more "ownership" over this issue which propelled him to purchase stocks. *Id*. ¶ 63 ("He believed that by taking ownership over his work and shares of the company, he can contribute more to seeking solutions so that Defendants can be a positive force behind. environmental human rights based on the public-facing statements that the Defendants made. He was unaware of the full scope of misrepresentations that Defendants were making and the scope of their greenwashing practices at the time."). It was also after Kip purchased the stocks that he came to understand the Defendants' misrepresentation and omission of facts regarding their support of fossil fuels from their annual reports to shareholders. *Id*. ¶ 64. Plaintiff came to a gradual revelation of Defendant's intentional greenwashing practices through a combination of the superficial facts (e.g., Defendants' publication of fossil fuel supporting journals, books, and products, support of politicians who deny climate change, etc.) as well as the following years of experiencing the internal politics of pressure and harassment by the

---

[1] RELX, Annual report and financial statement 2020, available at https://www.relx.com/~/media/Files/R/RELX-Group/documents/reports/annual-reports/2020-annual-report.pdf

Defendants (*Id.* ¶¶ 65-66), dismissal, suppression and hostility toward the employees and Plaintiff who advocated through the RGRC and reports (*Id.* ¶¶ 68-77), and eventually the threats and termination that targeted Plaintiff himself. *Id.*

Defendants' arguments cut against their own defense: they argue that because their most egregious false statements (i.e. UN Net Zero pledge) occurred after Defendants' contradictory actions were already public (e.g. support for climate-change-denying politicians since 2014), and that Plaintiff should have known better that Defendants were already lying when Plaintiff purchased the stocks in 2021. Def. Br. at 29. Unlike *Karth*, the case cited by Defendants, where the defendants filed curative disclosures to rectify the misrepresentations prior to the stockholders' purchase of stocks, here, Defendants consistently upkept a false dual narrative of promoting sustainability, while consistently omitting, and misrepresenting their pro-fossil-fuel activities from their representations to the public and to investors. *See Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 139 (1st Cir. 2021) (reviewing distinguishable facts, concluding that defendants whose "statements are merely expressions of past optimism" which substantively were "cured" through corrective filings could not constitute "fraud by hindsight.").

Here, Plaintiffs have sufficiently stated that Defendants were a long time UNGC signatories[2], in or prior to 2021 (facts which will surface through discovery). *Id.* ¶14. Defendants then furthered their false sustainability- narrative by pledging to be part of UN Net Zero in 2021 to date. *Id.* ¶¶ 11-12, 14-15 ("Defendants also stated to shareholders that they are adhering to the United Nations Global Compact (UNGC), ensuring that no function is conflicting with company sustainability commitments and objectives.") (quotations omitted). Yet, Defendants never revealed in any of their SDG fund marketing materials or Annual Reports that they are going

---

[2] RELX, Annual report and financial statement 2020, available at https://www.relx.com/~/media/Files/R/RELX-Group/documents/reports/annual-reports/2020-annual-report.pdf

against UNGC principles or UN Net Zero Pledge nor did they issue any corrective filings regarding this material information for investors about their admitted involvement in advancing fossil fuel explorations. Def. Br. 14-16 (not denying any of the actions or conduct alleged regarding pro-fossil-fuel activities but arguments focused on whether their pro-fossil-fuel activities would have been misleading to reasonable investors, which is a question of fact).

**B.      The Amended Complaint Sufficiently Pleads That Defendants Made Material Misrepresentation and Omissions with Contemporaneous Knowledge of Falsity**

The Amended Complaint alleges material misrepresentations and omissions. Statements are material if a reasonable investor would have viewed it as "having significantly altered the total mix of information made available." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir. 1996) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)) (internal quotation marks omitted). The PSLRA provides that a misleading statement or omission is alleged when plaintiff claims that defendant made "an untrue statement of a material fact," 15 U.S.C. § 78u–4(b)(1)(A), or "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading," *id.* § 78u–4(b)(1)(B). "While a company need not reveal every piece of information that affects anything said before, it must disclose facts, 'if any, that are needed so that what was revealed [before] would not be so incomplete as to mislead.'" *In re Cabletron Sys.*, 311 F.3d 11, 36 (1st Cir. 2002) (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir.1990) (en banc)). Furthermore, materiality is itself a mixed question of law and fact—as the Supreme Court recognized in *TSC Industries*, a materiality determination "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." 426 U.S. at 450; *see also Washtenaw County Emples. Ret. Sys. v. Avid Tech.,*

*Inc*., 28 F. Supp. 3d 93 (D. Mass. 2014) (noting that rigorous standards for pleading fraud do not require plaintiffs to present evidence at the pleading stage, as long as the complaint sufficiently identifies fraudulent statements). In reviewing the materiality of shareholder fraud claims, the claims should survive unless the misrepresentation is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Util. Co*., 228 F.3d 154, 162 (2d Cir. 2000).

Defendants take the position that their sustainability-related statements are nothing more than aspirations and forward-looking, thus it would not rise to falsehood. Such an assertion is morally and legally troubling. Defendants made concrete and actionable statements about their sustainability commitments, including their pledge to UN's Net-Zero campaign goals, UN Race to Zero, and more. As pleaded in the Amended Complaint, Defendants' commitment to the Climate Pledge –which they not only touted but signed -- were not generalized forward-looking statements but actionable misrepresentations. Courts found actionable various companies' misrepresentations about their compliance with corporate policy. *See, e.g., In re Am. Apparel, Inc. S'holder Litig*., 855 F.Supp.2d 1043, 1049–50, 1066–67 (C.D. Cal. 2012) (statement that defendant company "made diligent efforts to comply with all employment and labor regulations" and that corporate policy was to "fully comply with its obligations to establish the employment eligibility of prospective employers under immigration laws" misled investors because company actually employed hundreds of illegal immigrants whom it later was required to terminate); *Ross v. Career Educ. Corp*., No. 12 C 276, 2012 WL 5363431, at *6 (N.D. Ill. Oct. 30, 2012) (statement that a school "carefully reviewed and modified [its] policies and practices for reporting job placement rates, admissions and advertising" misled investors as it was still misrepresenting its placement rates); *Lapin v. Goldman Sachs Grp., Inc*., 506 F.Supp.2d 221, 229–30 (S.D.N.Y. 2006)

(statements by investment bank touting its "unbiased" research was false or misleading because analysts were beset by conflicts of interest).

Here, Defendants sustainability commitments are actionable because they represent a commitment, alignment, pledge and compliance with UN and other governing bodies' standards to achieve specific goals, prompting specific actions. By stating that it is pledging and committing to be aligned with the Net Zero and Sustainability Pledges while continuing to support new fossil fuel explorations, this mismatch of concrete statements versus actions forms the basis for investor fraud. *See also Avalanche IP, LLC v. FAM, LLC*, No. 20-CV-10102-ADB, 2021 WL 149258, at *7 (D. Mass. Jan. 15, 2021) (holding that FRCP 9(b)'s special pleadings standard for fraud was satisfied because a company's statement showing commitment to a certain action (i.e., contributing funding into plaintiff company's brand and maintaining the branding to external consumers) was a promise, not merely a "[v]ague expression[ ] of hope and future expectation or mere opinion and puffery."). Defendants cite an out of circuit case, which is distinguishable because the court did not find any specific actions or promises inferred by the forward-looking aspirations for sustainability by the defendants. *Fanucchi v. Enviva Inc.*, No. CV DKC 22-2844, 2024 WL 3302564, at *11 (D. Md. July 3, 2024) ("Rather, the Category D Statements merely expressed that Enviva considered sustainability important. As such, the Category D Statements are too vague, aspirational, and non-verifiable to be materially misleading to a reasonable investor.")

Here, Plaintiff's Amended Complaint incorporates Defendant's specific and concrete promises to undertake specific actions that were reasonably expected. As one of many examples, when Defendants state in its Annual Report to shareholders that it is committed to Net Zero, and UN Race to Zero, it is plausibly inferred that a shareholder will materially understand this to mean that Defendants are aligning its practice to the Net Zero and Race to Zero goals, because, as

declared by the United Nations Secretary-General, "net-zero cannot be a mere public relations exercise."[3] Private entities have no obligation to participate in climate pledges or UN climate commitments; <u>hence, when a company promises to, a reasonable shareholder would believe that the company's practices were aligned with its stated commitments</u>.

The Amended Complaint refers to the UN Net Zero and UN Race to Zero policies, and alleges that Defendants' conduct was contrary to those goals. *See, e.g.,* AC ¶¶ 10-12. When a company commits to UN's Net Zero and Race to Zero, it means: "Non-state actors cannot claim to be net zero while continuing to build or invest in new fossil fuel supply. Non-state actors cannot lobby to undermine ambitious government climate policies either directly or through trade associations or other bodies. Instead, they must align their advocacy, as well as their governance and business strategies with their climate commitments." *Id*. Yet, in direct contravention to the Defendants' stated Net Zero and Race to Zero pledges, the Amended Complaint plausibly alleges that Defendants made the promise and pledge to perform concrete actions adherent to UN Net Zero and UNGC, yet in contrast they provide services and tools to support new fossil fuel exploitation, while also paying policy makers who deny climate change. *See* AC ¶¶ 12-14.

Defendants also shirk responsibility by arguing that their representations cannot be held to such a high standard as to mean actual and present compliance, but that it should have been read as aspirational. Def.'s Br. at 23-24. This is an untenable argument at this stage of motion to dismiss, because the Amended Complaint asserts that Defendants stated to shareholders that it is presently adhering to the United Nations Global Compact (UNGC), "ensuring that no function is conflicting with company sustainability commitments and objectives." *See* AC ¶14. The UNGC's stance on

---

[3] https://www.un.org/sg/en/content/sg/speeches/2022-11-08/secretary-generals-remarks-launch-of-report-of-high-level-expert-group-net-zero-commitments%C2%A0.

fossil fuel is clear: "Committing to going 100% renewable" and "divesting from fossil fuels."[4] Viewing the allegations in the light most favorable to the Plaintiff, the Amended Complaint adequately pleads that the statements made by Defendants were material and false, contemporaneously and consistently.

Moreover, Defendants assert that reasonable investors would not interpret Defendant's Pledges to mean perfect compliance, arguing:

> "A company can aim to achieve net zero carbon emissions by 2040 and yet still sell scientific journal articles that end users may use to extract oil.12 (Id.). A company can be working to further UNGC principles and yet still publish some journals read by the oil-and-gas industry. (Id.). A company can work to further sustainable development goals and have had employees of its predecessor entity donate to a PAC that in turn donated between 2014 and 2016 to politicians whose stance on climate issues Plaintiff disagrees with. (Id.)."
> Def. Br. at 28-29.

Not only do Defendants' arguments seek for this Court to make baseless factual inferences about the mind of the reasonable investor, the arguments are not even logically coherent. Indeed, the Net Zero and UNGC principles highlight an urgency in absolutely ending promoting of fossil fuel explorations, and Defendants' own representations (not the Plaintiffs' sage opinions) have stated that it is in compliance with the Net Zero and UNGC policies. *See* AC ¶¶ 44-45 (quoting from RELX Annual Report, "only commission new content that advances the energy transition and reduction of $CO_2$ emissions"); AC ¶11 (Net Zero clearly states, "non-state actors cannot claim to be net zero while continuing to build or invest in new fossil fuel supply. Non-state actors cannot lobby to undermine ambitious government climate policies either directly or through trade associations or other bodies.").

In the case cited by Defendants, *NPS LLC v. Ambac Assurance Corp.*, 706 F. Supp. 2d 162, 173 (D. Mass. 2010), the court reviewed marketing language such as, "time-tested business model

---

[4] UNGC, CLIMATE Brief, https://unglobalcompact.org/take-action/20th-anniversary-campaign/uniting-business-to-tackle-covid-19/climate (last accessed, Nov. 17, 2024)

of stringent underwriting practices and the remote risk of loss" describing an insurer's business and decided that such a description is not determined to be false because it is "not coupled with any specific statements of fact." In contrast, here, Defendants represented its adherence (contemporaneous and future) with specific steps and policies that were required by the UN Net Zero and UNGC commitments. Hence, here, the misrepresentation is sufficiently tied to ascertainable standards to review its falsity. *See e.g., In re Moody's Corp.*, 599 F.Supp.2d 493, 509 (S.D.N.Y.2009) (the company's statements about its independence were not puffery because the company listed "specific steps [it] was taking to ensure its independence and ratings integrity").

### C.    The Amended Complaint Sufficiently Pleads Scienter

Scienter can be proven by showing that the defendants either knowingly made false statements or acted recklessly by disregarding the risk of misleading investors. *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1 (D. Mass. 2004).

For scienter, the complaint must, "with respect to each act or omission ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added); *see also Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 86 (1st Cir. 2008). Such inference is plausible from allegations that a defendant had a motive to make misleading statements for financial gains. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007) ("[M]otive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference," but "the absence of a motive allegation is not fatal" to a claim). A complaint will survive a motion to dismiss if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Id.* In reviewing scienter allegations, courts can consider the totality of circumstances and infer from circumstantial

evidence. *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187 (1st Cir. 2005). Defendants'

issuance of statements while knowing facts "suggesting the statements were inaccurate or

misleadingly incomplete is classic evidence of scienter." *Aldridge v. A.T. Cross*, 284 F.3d 72, 86

(1st Cir. 2002).


**D.      The Complaint Pleads that Defendants Knew, or Recklessly Ignored, Material
         Adverse Information**

The Amended Complaint alleges that RELX knew or intentionally disregarded their own

misrepresentation regarding greenwashing. The Complaint highlights that Defendants knowingly

and intentionally made commitments and pledges (explained in the previous section). And,

between September 2021 and April 2023, the Responsible Growth Report Committee (RGRC),

led by the Plaintiff, repeatedly brought RELX's greenwashing practices to the company's

attention. AC ¶¶ 48-55. The RGRC published six Responsible Growth Reports (RGRs), which

detailed how RELX's policies and business practices contradicted their public-facing

sustainability pledges. *See id.* (Plaintiff leading an internal effort to expose the misalignment

between Defendants' business practices and their sustainability pledges, presenting findings to the

company). The Amended Complaint alleges that Defendants knew or recklessly ignored the

material misstatements when they dismissed, and retaliated against Plaintiff and employees who

brought such concerns to the Defendants' awareness, while continuing to make material

misrepresentations to investors and the public. *See, e.g.*, AC ¶¶ 55-59; 84-85. Moreover, the

Complaint alleges that RELX has never conducted an independent third-party investigation as

required for ethics complaints points to a deliberate attempt to avoid uncovering the truth about

their business practices, nor took corrective action in response to the RGRs. *See id.* ¶ 75.

Another way to plead scienter is to allege that circumstantially, defendants had an incentive and benefit by making misrepresentations. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 392, 412 (S.D.N.Y. 2003) (factual allegations that the defendants would benefit from fraud sufficient for scienter requirement); *Crowell v. Ionics, Inc*., 343 F. Supp. 2d 1 (D. Mass. 2004) (testimonies and other circumstantial evidence, such as company practices like inflating revenue and shuffling products, were sufficient to infer fraud at the pleading stage).

Among other reasons, the Amended Complaint alleges that Defendants were motivated to greenwash their operations because it would be beneficial to them in terms of marketing to various sectors of investors and consumers. *See* AC ¶¶ 54-59 (listing all of the ESG highlights the Defendants represented to investors including Net Zero to gain a "green stamp" to attract conscientious investors.)

### E.     The Amended Complaint Adequately Pleads the Remaining Elements of Shareholder Fraud

The Amended Complaint adequately pleads "a connection with the purchase or sale of a security; reliance; economic loss; and loss causation" and include issues of fact that must not be resolved at this stage. *See Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp*., 523 F.3d 75, 85 (1st Cir. 2008). Loss causation, unlike scienter, is measured against Rule 8(a)'s liberal notice pleading standard. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005); *Pub. Emps. Ret. Sys. Of Miss. v. Amedisys, Inc*., 769 F.3d 313, 320 (5th Cir. 2014). Rule 8(a) notice pleading does "not . . . impose a great burden," and for loss causation requires only that plaintiffs "provide[] the defendants with notice of what the relevant economic loss might be or of what the causal connection might be." *Dura*, 544 U.S. at 346-47. As such, "it is often inappropriate to use a Rule 12(b)(6) motion as a vehicle to resolve disputes over 'loss causation.'" *Lormand v. US Unwired*, *Inc.*, 565 F.3d 228, 267 n.35 (5th Cir. 2009).

The Amended Complaint sufficiently lays out the Plaintiff's reliance on Defendants' misrepresentations that Defendants would be responsive to environmental concerns. The Complaint sufficiently alleges that Plaintiff and the class suffered damages because they paid artificially inflated prices for RELX stock, believing the company performed well on ESG criteria, making it a safer, long-term investment. Plaintiff further alleges that this harm is directly linked to the Defendants' misleading ESG statements. AC ¶ 152 ("Defendants' misleading statements inflated RELX's stock price, causing investors, including the Plaintiff, to purchase shares at prices that were artificially inflated due to the company's false claims regarding its environmental performance . . . Plaintiff and the Class would not have purchased RELX stock at the prices they paid, or at all, if they had been aware . . . [of] misleading statements regarding their ESG compliance.").

While the specific method of calculations of damages has not been specified, Plaintiffs argue that this is an issue to be raised at fact discovery (i.e., gains and losses during class period before and after the disclosures of the misrepresentation) and through expert discovery (i.e., calculation how much loss is attributed to the misrepresentations in the relevant class period). "No more [than this] is required at the pleading stage." *In re BP P.L.C. Sec. Litig.*, 922 F. Supp. 2d 600, 638 (S.D. Tex. 2013).

## II.    Plaintiff's State and Federal Disabilities Discrimination Claims are Timely

Defendants allege that Plaintiff's claims under the Americans with Disabilities Act ("ADA") and Massachusetts Fair Employment Practices Act ("FEPA") are untimely; specifically, that "Plaintiff received notice of termination on June 7, 2023, so he should have filed an administrative charge on or before April 2, 2024. He did so two months late on June 2, 2024, and his statutory discrimination claims are thus time-barred." Def.'s Mot. at 22-23.

In so arguing, Defendants claim that the 300-day period to file an administrative charge *always* begins to run on the official date of the notice of termination, and not on the last day of work, without exception or nuance. *See id*. Defendants cite three cases in support, each of which is distinguishable. First, in *Del. State Coll. v. Ricks*, the Supreme Court expressly noted that "the only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the [denial of] tenure decision was made and communicated to Ricks." 449 U.S. 250, 258 (1980). Defendants fail to recognize that the First Circuit clarified and distinguished the *Ricks* opinion more than a decade later. In *Angeles-Sanchez v. Alvarado*, the First Circuit noted that the Supreme Court in *Ricks* "placed great emphasis on the finality and certainty of the college's decision to deny tenure, noting that it capped an 'unbroken array of negative decisions.' . . . We therefore understand *Ricks* to require that a decision to terminate employment must be 'unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination.'" 993 F.2d 1530, *3 (1st Cir. 1993). Moreover, the Supreme Court further clarified *Ricks* and its progeny in *Lewis v. City of Chicago*, in which it noted that "those cases establish only that a Title VII plaintiff must show a 'present violation' within the limitations period." 560 U.S. 205, 216 (2010). Defendants' effort to distinguish *Angeles-Sanchez* with this case is unconvincing, because the circumstance of Plaintiff receiving a termination and then almost concurrently being granted leave makes it certainly ambiguous.

At this early stage in litigation, Defendants cannot state that the original notice of termination was "unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination." *Angeles-Sanchez,* 993 F.2d 1530, *3. "In an employment discrimination case, the limitations period begins

to run when the claimant receives unambiguous and authoritative notice of the discriminatory act. If notice is equivocal, however, the clock may be tolled or simply never start to tick." *Svensson v. Putnam Invs. LLC*, 558 F. Supp. 2d 136, 142 (D. Mass. 2008) (citation omitted). Plaintiff alleges that he took medical leave for his disability pursuant to the Paid Family Medical Leave Act in June 2023, and was terminated immediately after his leave expired in August. *See* AC. ¶¶ 107-109. This constituted yet another discriminatory act. Thus, although Plaintiff has alleged that he received an initial notice of termination on June 7, 2023, he properly requested and was granted this leave from Defendants and was terminated for this additional reason on August 8, 2023.

The Amended Complaint alleges that Plaintiff experienced a significant decline in mental health, including anxiety, helplessness, grief, and despair, due to the Defendants. Specifically, a hostile work environment, combined with the company's refusal to acknowledge or rectify its harmful actions, contributed to the deterioration of Plaintiff's mental health. *Id.* ¶ 23. The Amended Complaint alleges that in March 2023, Plaintiff was diagnosed with "adjustment disorder with anxiety," attributed to the hostile work environment and his struggle to maintain integrity at work. *Id.* ¶ 24. Based on recommendations from his mental health provider, Plaintiff requested accommodations from the Defendants. These included limiting mandatory meetings to 45 minutes and requiring one business day's notice for such meetings to help manage his anxiety and mental health. *Id.* ¶ 25. The Complaint alleges that, in May 2023, Plaintiff emailed the VP of Publishing Operations, requesting these accommodations for his mental health, which were prescribed by his psychotherapist, (*id.* ¶ 103), and that the VP stated she would share it with HR, (*id.* ¶ 104). The Complaint alleges that, despite Plaintiff's request for accommodations, Defendants failed to provide the requested accommodations. *Id.* ¶ 24. On June 7, 2023, the Mr. Lyall had a meeting without notification about the nature of the meeting, and, to his surprise, the individuals

who had engaged in harassing and retaliatory practices were present at the meeting. *Id.* ¶¶ 105-107. Mr. Lyall simultaneously requested medical leave of absence via PFMLA due to the work environment and harassment. ¶ 107. The Amended Complaint emphasizes that only after the medical leave was granted did Mr. Lyall received a termination letter from the US Employee Relations Lead at RELX. *Id.* ¶ 108-109. On August 8, 2023, Mr. Lyall was terminated upon the expiration of his PFMLA leave. *Id.* ¶ 109.

Discovery is required to determine whether the June 7, 2023 notice of termination that Plaintiff pleads in his Complaint was unequivocal. For example, discovery will show whether the notice had a date or condition certain for Plaintiff's termination; if not, then it appears that his termination was not an absolute certainty and, if so, then discovery is also required to explain why Defendants granted Plaintiff leave and then terminated him upon his return. Moreover, Defendants' motion warrants denial on this ground and at this early stage particularly where the meeting itself was defective in terms of accommodating him. AC. ¶ 25; *see also id.* ¶ 125. Then, Plaintiff pleaded that "A few days after Mr. Lyall requested the accommodations meeting boundaries, Cell Press management set a one-on-one meeting with Mr. Lyall on June 7, 2023 which appeared to be an ordinary business meeting. He was given no pre-notification about the nature or participants of the meeting aside from his manager." *Id.* ¶ 105. Moreover, Plaintiff pleaded that when he "signed into the meeting on June 7, 2023, the individuals who had engaged in harassing and retaliatory practices were present, specifically the MD/SVP." *Id.* ¶ 106. Defendants failed to hold a termination meeting with Plaintiff within the appropriate parameters of accommodation, and he was forced to leave early as a result. This further demonstrates that the purported termination meeting was not "unequivocal." In any event, Defendants thereafter continued to retaliate against Plaintiff "by sending letters containing legal threats and demanding

that Plaintiff cease publishing his opinions regarding Defendants' greenwashing conduct." *Id.* ¶ 99. For these reasons, Plaintiff's claims are timely.

### III.    Plaintiff's Wrongful Discharge and Promissory Estoppel Claims are Sufficiently Pleaded

Plaintiff's wrongful discharge and promissory estoppel claims also do not warrant dismissal at this early stage in litigation. In addition to the detailed factual allegations set forth throughout the Complaint, Plaintiff specifically pleaded the elements of the Wrongful Discharge Claim and Promissory Estoppel Claims. AC ¶¶ 139-146; 157-162). The Amended Complaint also alleges that Defendants pledged to reduce greenhouse gas emissions and align with the Paris Climate Agreement, committing to sustainability goals in their SEC filings and public statements, which were part of the written policies Plaintiff relied upon in advocating for better climate practices. *Id.* ¶¶ 10-11. For instance, AC refers to RELX's Code of Ethics Policy, which prohibits efforts to defraud shareholders or make false or misleading statements about business practices, including those related to products, services, sales, financial condition, and compliance practices. *Id.* ¶¶ 65-66. The policy is intended to uphold transparency and ethical behavior within the company, or the Code of Ethics as part of his submission of an ethics complaint in April 2021, where he raised concerns about Defendants' greenwashing practices. In his Complaint, Plaintiff also references RELX's internal policies that Plaintiff believed were intended to protect employees from retaliation or harassment for raising ethics concerns. These policies were a basis for Plaintiff's reliance on the company's stated commitments to ethical behavior and whistleblower protections. *Id.* ¶ 61. Therefore, the complaint alleges that Defendants breached these promises by retaliating against Plaintiff for following these policies and procedures, resulting in his wrongful termination, causing Plaintiff irreparable harm, including loss of compensation, reputational damage, and emotional distress. *Id.* ¶ 144.

Nevertheless, Defendants argue that this alleged conduct does not rise to a vaguely-specified level necessary to invoke this public policy exception nor any theory of estoppel. This is a contention that is inappropriate to adjudicate at this stage. As for the public policy exception, guidance from Massachusetts' highest court notes that the exception may extend to employees "terminated for performing important public deeds, even though the law does not absolutely require performance of such a deed." *Flesner*, 410 Mass. at 811.

Moreover, Defendants rely heavily on *Meehan v. Med. Info. Tech., Inc*., 177 N.E.3d 917 (Mass. 2021). But the Supreme Judicial Court of Massachusetts there did not limit application of the public policy exception to "being a witness in a government investigation, serving on a jury, [or] testifying pursuant to a subpoena," as Defendants suggest. *See* Def.'s Motion at 19. Instead, it noted that, "where there has been no legislative recognition of the right, an examination of the importance and public nature of the policy at issue in the discharge of the at-will employee is necessary to determine whether it merits protection." *Meehan*, 177 N.E.3d at 922. As such, whether this exception applies is highly fact specific and to be determined on a case-by-case basis. For these reasons, Plaintiff's wrongful termination and promissory estoppel claims are sufficiently pleaded, and Defendants' motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety, and grant such other and further relief as the Court deems just.

Dated: February 21, 2025                                Respectfully Submitted,

By:

/s/ Juyoun Han
Juyoun Han, Esq.
**Eisenberg & Baum LLP**